UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ERIC H. DENEKAMP and RYAN M. DENEKAMP, <br><br>          Plaintiffs, <br><br>     vs. <br><br> HETRONIC USA, INC.; <br> IOWA MOLD TOOLING CO., INC.; <br> RUCO EQUIPMENT CO., INC.; and <br> PARKER HANNIFIN CORPORATION, <br><br>          Defendants. | CIV.  06-5025-KES <br><br><br> ORDER DENYING <br> DEFENDANT IMT'S <br> MOTION FOR PARTIAL <br> SUMMARY JUDGMENT |

Defendant, Iowa Mold Tooling Co, Inc. (IMT), moves for partial summary judgment on plaintiffs' strict liability claims. Plaintiffs oppose the motion. The motion is denied.

**FACTUAL BACKGROUND**

Viewing the evidence in the light most favorable to the nonmoving party, plaintiffs, the facts are as follows:

In February 1997, IMT manufactured a series of 16042 cranes for use in the building supply and material handling industries. When IMT manufactured the crane, the crane contained manual controls consisting of joysticks and foot pedals and was not equipped with a remote control. RUCO

Equipment Co., Inc. (RUCO) purchased a series 16042 crane and attached it to a Ford truck for use as a combined unit. PSMF,[1] Docket 193, at ¶¶ 1-3.

RUCO added a remote control unit, which was manufactured by Hetronic USA, Inc. (Hetronic), to the crane. Plaintiffs assert that the remote conversion kit was purchased from IMT. The parties dispute whether the remote control unit was the only means of operating the crane after the installation of the Hectronic remote control system. The parties agree that the addition of the remote control unit to the crane manufactured by IMT did not render the crane defective or unreasonably dangerous. RUCO sold the crane and the attached truck to Centurion Leasing, Inc. (Centurion). Id. at ¶¶ 4-7.

In July 2000, RUCO added manual backup controls to the crane. Plaintiffs' expert, Dr. Bernard Ross, opined that RUCO installed the manual backup controls "using an IMT conversion kit, IMT engineering drawings and with IMT cooperation" and that the installation of such controls "created a defective machine." Id. at ¶ 8. As part of the addition of the manual backup controls, RUCO installed levers and moved valve sections controlling the inner boom and crane rotation to the bottom of the crane's mast where controls for the secondary boom, extension, fork close/open, and fork rotation already existed. After RUCO installed the manual backup controls, there were two

---

[1] PSMF is an abbreviation for Plaintiffs' Response to Defendant IMT's Statement of Undisputed Material Facts. Docket 193.

independent means of controlling the crane, which included the remote control and the manual controls (six levers) located at the top of the mast. As such, after the crane was modified by RUCO in July 2000, the crane was subject to being controlled by two different sets of controls at the same time. RUCO received the crane back from the owner, Centurion, in a consignment transaction in 2003, approximately six years after RUCO purchased it from IMT. After RUCO took the crane back on consignment from Centurion, RUCO sold the crane to United Building Centers, the employer of plaintiff Eric Denekamp. Id. at ¶¶ 9-12.

On October 23, 2003, Eric Denekamp used the same crane to deliver shingles to a residential job in Spearfish, South Dakota. Denekamp used a pallet attached to the forks of the crane to raise himself and the shingles to the roof. When descending from the roof, Denekamp operated the crane with the remote control while sitting on the pallet. While the crane was in use, the manual controls installed by RUCO became entangled in tree branches, which activated the crane's forks. As a result, the crane's forks closed on Denekamp, who was riding on the pallet. Id. at ¶¶ 13-17. Denekamp was seriously injured in the incident and was rendered paraplegic.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

**DISCUSSION**

**I.     Strict Liability in Products Liability Cases**

In this diversity case, South Dakota law controls the substantive issues.  See <u>Integrity Floorcovering, Inc. v. Broan-Nutone, LLC</u>, 521 F.3d 914, 917 (8th Cir. 2008).  The South Dakota Supreme Court has recognized strict liability in tort in products liability cases and has adopted the Restatement (Second) of Torts § 402A.  <u>Engberg v. Ford Motor Co.</u>, 205 N.W.2d 104, 108-109 (S.D. 1973), <u>disapproved on other grounds</u>, <u>Smith v. Smith</u>, 278 N.W.2d 155 (S.D. 1979).  Under § 402A of the Restatement (Second) of Torts,

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>     (a) the seller is engaged in the business of selling such a product, and
>     (b) it is expected to and does reach the user or consumer without substantial changes in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
>     (a) the seller has exercised all possible care in the preparation and sale of his product, and
>     (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In products liability cases, "[t]hree broad classes of defects have emerged: manufacturing defects where individual products within a product line are improperly *constructed*, *design* defects involving the entire product line, and defect by *failure to properly warn* or instruct users of a product where such

failure renders the product hazardous." Peterson v. Safway Steel Scaffolds Co., 400 N.W.2d 909, 912 (S.D. 1987).

Plaintiffs allege that as a result of defects in design, the crane was in a defective condition which made it unreasonably dangerous and that as a result of a lack of and/or inadequate warning, the crane was rendered defective and unreasonably dangerous. Docket 74. Plaintiffs argue that because IMT was involved in the redesign and re-manufacture of the crane, IMT is liable as a seller.

**A.   Defective Product**

Under the theory of defective design, "[s]trict liability arises when a manufacturer 'sells any product in a defective condition unreasonably dangerous to the user or consumer.' " Burley v. Kytec Innovative Sports Equipment, Inc., 737 N.W.2d 397, 408 (S.D. 2007) (citation omitted). The plaintiff is not required to prove that the defendants knew or should have known of the defective nature of the product. Peterson, 400 N.W.2d at 912. Rather, "[i]t is the unreasonableness of the condition of the product, not of the conduct of the defendant, that creates liability." Burley, 737 N.W.2d at 408.

The parties did not discuss and the court is unaware of any South Dakota case that specifically addresses the nature and extent of involvement that is required to hold a party strictly liable for a defective product. Other courts, however, have addressed this issue. For example, the Colorado

6

Supreme Court has addressed this issue and found that certain decisions and participation in the design and construction processes may be sufficient to allow a party to be held strictly liable for a defective product. Union Supply Co. v. Pust, 583 P.2d 276, 281 (Co. 1978).[2] More specifically, the Colorado Supreme Court has recognized that more than one party may be a designer of a product and that "[w]here two or more parties collaborate and where each substantially contributes to the final design, each is a designer of the final product." Id. Further, "[d]esign appears to involve: 'that part of the manufacturing process requiring decisions as to the general structure, shape, size, material, and methods or processes of construction.' " Id. (citation omitted). Relying upon these principles, the Colorado Supreme Court concluded that a jury could determine that two companies designed a defective product and if one company was found by the jury to be a designer

---

[2] When this court is applying South Dakota law and the South Dakota Supreme Court has not specifically addressed an issue, the court must determine what the state supreme court "would probably hold were it to decide the issue." Farr v. Farm Bureau Ins. Co., 61 F.3d 677, 679 (8th Cir. 1995). In resolving such questions, the court may consider relevant state precedent, analogous decisions, scholarly works, and other reliable date. See id. These data include judicial decisions from other jurisdictions whose doctrinal approach to legal matters is substantially the same as South Dakota's approach. Wright, Miller, and Cooper, Federal Practice and Procedure: Jurisdiction 2d, § 4507 (2008). The court finds the Colorado Supreme Court decision especially persuasive because it has expressly adopted the doctrine of strict liability in tort, based upon the Restatement (Second) of Torts § 402A, just as the South Dakota Supreme Court has. See Pust, 583 P.2d at 280.

and if the other elements of a § 402A design defect were established, the company would be strictly liable for the plaintiff's injuries. Id.

Moreover, many courts have addressed whether a manufacturer is liable for a design defect if it follows a customer's specifications in manufacturing a finished product. The general rule that many courts have adopted is that "when a product is manufactured according to specifications, the manufacturer is not liable for design defects, unless the specifications are so obviously dangerous that they should not be followed." Thompson v. Hirano Tecseed Co., 456 F.3d 805, 809 (8th Cir. 2006) (applying Minnesota law). From this general rule, it necessarily follows that if a company was significantly involved in designing a defective product, it may be held strictly liable for the defective product.

Here, plaintiffs have presented evidence that IMT participated in the redesign and re-manufacture of the crane. David Taff, Operations Manager for RUCO, testified that after the purchaser of the boom truck requested that RUCO install a manual backup control retrofit on the crane, RUCO turned to IMT for guidance. Docket 194-2, at p. 9.[3] Taff also testified that IMT had

---

[3] These facts were submitted by plaintiffs as additional undisputed material facts, and defendant objects to the court considering them. L.R. 56.1(c) states that "[a] party shall attach all relevant documentary evidence in support or against a motion for summary judgment to an affidavit." Here, plaintiffs submitted their documentary evidence against defendant's motion for summary judgment, and such evidence was attached to an affidavit signed by plaintiffs' counsel. Docket 194. Accordingly, the court finds plaintiffs have

multiple discussions with RUCO about how to install manual backup controls. Id. at p. 9; Docket 194-3, at p. 9. In addition, RUCO had conversations with individuals at IMT, including Jim Darr, about the manual backup controls, the chair, and the control handles. Docket 194-3, at p. 9. Further, Taff testified that when RUCO did its retrofit, IMT was involved in telling RUCO how it should do it. In fact, IMT, Taff, and John Keefer determined the methods to use to install the manual backup controls. During the installation process, RUCO also relied upon drawings prepared by IMT. Docket 194-2, at p. 9. Finally, and most significantly, IMT acknowledges that "a factual dispute has arisen as to the level, degree, and specifics of any consultation IMT provided to RUCO when RUCO reconfigured the controls on the subject crane." Docket 196, at p. 14.

Based upon the evidence plaintiffs submitted, the court finds that there is a genuine issue of material fact as to the nature and extent of IMT's involvement in RUCO's installation of the manual backup controls on the crane. Thus, summary judgment is not proper on plaintiffs' defective design claim.

---

complied with L.R. 56.1 and, as a result, the court may rely on plaintiffs' submitted documentary evidence, which includes deposition transcripts of David Taff and Karl Bauer.

## B.    Failure to Warn

Under the theory of failure to warn, " '[t]he issue under strict liability is whether the manufacturer's failure to adequately warn rendered the product unreasonably dangerous without regard to the reasonableness of the failure to warn judged by negligence standards.' " Burley, 737 N.W.2d at 409 (citation omitted).  But the product itself does not have to be defective.  Rather, " '[w]here a manufacturer or seller has reason to anticipate that danger may result from a particular use of [the] product, and [the manufacturer] fails to give adequate warning of such a danger, the product sold without such warning is in a defective condition within the strict liability doctrine.' " Id. (citation omitted).

As discussed above, plaintiffs submitted evidence that IMT was involved in RUCO's installation of the manual backup controls on the crane.  Plaintiffs also presented evidence that IMT may have known that installing manual backup controls in addition to a remote control could potentially be dangerous.  Karl Bauer, the Engineering Manager for IMT, stated that he believed that IMT knew that the installation of manual backup controls resulted in the crane being operable by two independent means of control.  Bauer also testified that he believed that due to testing, IMT probably knew that pressing the "Emergency Stop" button on the remote control would not cease all function if the manual controls were engaged.  Docket 194-6, at p. 2,

4. Accordingly, a genuine issue of material fact exists as to IMT's involvement in the installation of the manual backup controls and as to whether IMT had reason to anticipate that danger may result from use of the crane and failed to give adequate warning of such danger. As such, summary judgment is not appropriate on plaintiffs' failure to warn claim.

Based on the foregoing, it is hereby

ORDERED that defendant IMT's motion for partial summary judgment (Docket 184) is denied.

IT IS FURTHER ORDERED that plaintiffs' request for oral argument on defendant's motion for partial summary judgment (Docket192) is denied as moot.

Dated October 17, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

11